UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

  v.                          CR-1-10-24

WHITNEY BARNES,

        Defendant.

## ORDER

This matter is before the Court upon defendant's Motion to Suppress (doc. no. 20) and the Government's Response thereto (doc. no. 22). In his Motion, the defendant moves the Court to suppress any and all evidence and/or statements obtained from the defendant. He argues that the initial stop of the defendant was unconstitutional as was the pat down and arrest. A hearing was held in this matter on Wednesday and Thursday, May 26 and 27, 2010.

The testimony offered at the hearing consisted of three police officers assigned to District Four: Scott Brians, Jimmy Pham, and John Brown. The Court also heard tapes of the calls made to District Four on the day of the detention. Based upon the evidence received at the hearing, after observing the demeanor of the witnesses, the Court makes the following Findings of Facts and Conclusions of Law.

1

**FINDINGS OF FACT**

Defendant Barnes is charged in a one-count Indictment with a violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2).

During the evening of December 12, 2009, the Cincinnati Police at District Four received calls reporting gunshots fired between Malvern Place and Auburn Avenue in Cincinnati, Ohio. The area is known as a high-crime area, with frequent "shots fired" calls made to District Four.

Officer John Brown testified he was working the desk at District Four on the evening of December 12, 2009. He has been a Cincinnati Police Officer for five years. He testified he received a call at 8:04 p.m.. A tape of the call was played for the Court. The caller described a Lincoln Town car with tinted windows, currently visible from her residence on Malvern, the area of the "shot fired" calls. The caller identified the car as "suspicious" and said she believed it was connected to the shootings. The caller gave her name, address, and phone number. A dispatch was issued with the information at 8:06 p.m..

Pursuant to a dispatch to the area at 8:02 p.m., Officer Brians was investigating parked cars in the area for possible victims of earlier reports of "shots fired". He knew District Four is a high crime area. He had been assigned there for three years. Within a few minutes of receiving the dispatch regarding the

2

Lincoln Town car, he observed a Lincoln Town car with tinted windows matching the description contained in the dispatch exiting Malvern Place. By 8:08 p.m., he had pulled up behind the Lincoln Town car as it turned left onto Eleanor and then left onto Dorchester.

He was unable to see any license plate on the vehicle as he followed it. He testified that this would have been a basis for stopping the vehicle, since it was a violation of a Cincinnati ordinance. He turned on his lights, activating the MVR recording system. The vehicle stopped immediately. After he and Officer Karen Parker, who had pulled up behind him in her cruiser, got close to the vehicle, Officer Brians called in his report to dispatch that he had stopped the vehicle at 8:10p.m.. He and Officer Parker walked toward the vehicle. At that point, they were able to see the temporary license plate displayed in the rear window.

Officer Brians walked up to the vehicle at a diagonal, which he described as a precautionary movement. Officer Parker approached from the passenger side. The driver of the vehicle told Officer Brians that he and the passenger were on a date and asked him why he had been stopped. Officer Brians did not respond. Officer Brians testified that the driver appeared nervous and his hands were shaking.

He obtained the driver's information, returned to his cruiser,

3

and ran a records check. The driver's record check revealed that he had a conviction for carrying a concealed weapon, two drug convictions, and a conviction for possessing a weapon while under a disability, there were no outstanding warrants for his arrest, and his license was valid.

Officer Brians testified that, based upon the information he had acquired, including the driver's history with guns, the area, the calls about shootings, and the vehicle's matching description sent over the radio, he returned to the vehicle and requested that the driver get out of the Lincoln so he could frisk him. Officer Brians explained to the Court that this is a safety procedure. The driver became more agitated, but complied after several requests.

By this time, another cruiser had arrived and the officers approached with drawn weapons because of the "shots fired" call, the reputation of the location, and the description of the vehicle that had been dispatched. Officer Pham testified that, as he approached, the defendant was becoming physically threatening. Officer Barnes removed defendant from his vehicle, pushed him up against the vehicle, and handcuffed his hands behind his back in order to check him for weapons. Officer Brians began to frisk him. When Mr. Barnes became more combative, Officer Pham pulled out his taser. During the pat-down, Officer Brians felt what he believed was a gun in the defendant's front pocket and asked Officer Pham to assist him. Officer Pham, using a flashlight, looked into the

4

pocket, saw the gun and removed it by 8:15 p.m..

Officer Pham took the gun back to the cruiser. He discovered that the safety was off, there was a round in the chambers, and the hammer was cocked back.

Officer Brians told Mr. Barnes he was under arrest at 8:32p.m.. Mr. Barnes told Officer Brians that he had been shot in 2002 and carried a gun for protection. He was immediately advised of his *Miranda* rights by Officer Brians.

Officer Brians asked Officer Pham to transport the defendant for booking because Officer Brians' shift was over. While on the way, the defendant stated that he carried the gun for protection.

## CONCLUSIONS OF LAW

"There are three categories of interaction between police and citizens: consensual encounters, temporary detentions (or *Terry* stops), and arrests. The Fourth Amendment applies only to the latter two. Thus, a police officer must have a reasonable suspicion to conduct a temporary detention and probable cause to conclude an arrest, while no objective justification is required to initiate a consensual encounter." *United States v. Ushery*, 968 F.2d 575, 578 (6th Cir.), *cert. denied*, 506 U.S.946 (1992).

An ordinary traffic stop is analogous to a "*Terry* stop." *Berkemer v. McCarty*, 468 U.S. 420, 439 (1984). Even if the initial stop is lawful, any subsequent detention must not be excessively

intrusive. *United States v. Palomino*, 100 F.3d 446, 449 (6th Cir.1996).

In *Terry v. Ohio*, 392 U.S. 1 (1968), the United States Supreme Court articulated the standard for conducting a stop and detention. In analyzing the reasonableness of a detention, we will consider "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 at 20. A temporary detention for questioning does not require a showing of probable cause if it is justified by specific and articulable facts that give rise to a reasonable suspicion of criminal activity. *Terry*, 392 at 21. In order to conduct a lawful stop and detain a suspect, a police officer must be able to point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrants" a belief that criminal activity is afoot. Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring "articulable reasons" and "a particularized and objective basis for suspecting the particular person . . . of criminal activity." *United States v. Payne*, 181 F.3d 781, 788 (6th Cir.1999)(quoting *United States v. Cortez,* 449 U.S. 411, 417-18 (1981)).

A pat down during a stop is reasonable when additional facts are present which indicate that the person may be armed. *United States v. Campbell*, 549 F.3d 364, 373 (6th Cir.2008). This can be

6

performed based upon reasonable suspicion that he may be armed and dangerous. *Arizona v. Johnson,* – U.S. –, 129 S.Ct. 781 (2009).

In *United States v. Marxen,* 410 F.3d 326, 330 (6th Cir. 2005), the Court of Appeals for the Sixth Circuit concluded that "police are permitted to conduct a *Terry* stop to investigate completed felonies if they have reasonable suspicion to believe that the vehicle stopped was involved in criminal activity and the stop may produce evidence of a crime even if officers do not have reasonable suspicion to believe that the owner and/or driver of the vehicle was directly involved in the criminal activity."

When determining whether reasonable suspicion for a stop exists, this court must give "due weight" to an officer's determination. *See United States v. Arvizu,* 534 U.S. 266, 273-274, (citing *Ornelas v. United States,* 517 U.S. 690, 699 (1996)). The Court has held that an officer's specialized training and experience may permit him to make inferences from and deductions about the cumulative information available to him that "might well elude an untrained person." *Arvizu,* 534 U.S. at 273 (citing *United States v. Cortez,* 449 U.S. 411, 418 (1981)). A determination that reasonable suspicion exists, however, need not rule out the possibility of innocent conduct. *Id.* at 277.

Viewing the totality of the circumstances and giving due deference to the factual inferences of the officers, the Court finds that Officer Brians and the officers had reasonable suspicion

7

to believe the defendant's vehicle may have been involved in the "shots fired" incidents. In the course of investigating a report of gunshots, Officer Brians observed the vehicle reported by a telephone call and described in the dispatch. It was in the area of the reported criminal behavior. Within a very short period of time, the officer stopped the vehicle, ran a check, and found that the driver had been convicted of weapons offenses. This justified continued detention and a pat-down for the safety of the officers and the public.

It is undisputed Officer Brians personally observed that the defendant was in violation of license plates ordinances when he was stopped. When he approached the defendant's vehicle, the defendant became more and more agitated.

The Court finds that the officer had specific, articulable facts which gave rise to a reasonable suspicion to believe criminal activity was afoot. Officer Brians had been dispatched to a high crime area, where shots had been reported earlier. He had stopped a vehicle in the same area, which had been described as possibly being involved in the shooting. Taken together, these factors sufficed to form a particularized, objective basis for Brians' stopping of the vehicle, making the stop reasonable within the meaning of the Fourth Amendment. See, Arvizu, 534 U.S. at 277. He found out that the driver had been convicted of possession of a weapon on two occasions. The stop was justified at its

8

inception. The short detention prior to the pat down and arrest was reasonable and reasonably related in scope to the circumstances which justified it.

A police officer may only arrest a defendant without a warrant when that officer has probable cause to believe that the subject has committed a crime. *Tennessee v. Garner*, 471 U.S. 1 (1985). Probable cause to arrest is based upon knowledge that would lead a reasonable person to believe that an offense has been committed. In this case, the officer had personal knowledge that the defendant was a felon and in possession of a firearm.

The Court finds that the statements made after the defendant had been *Mirandized* are not a product of an illegal stop or arrest, were not in response to interrogatories and were volunteered.

## CONCLUSION

The Court finds that the credible testimony of the witnesses at the suppression hearing established that the defendant's encounter with Officers Brians and the other officers was lawful. The officers' conduct comported with the dictates of the Fourth Amendment and the laws of the United States.

Accordingly, defendant's Motion to Suppress is **DENIED** in its entirety.

**IT IS SO ORDERED.**

_____
Herman J. Weber, Senior Judge
United States District Court

9